UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOANN BAILEY, ET AL.** | **CIVIL ACTION** |
| **versus** | **No. 05-5193** |
| **LAWLER-WOOD HOUSING, LLC, ET AL.** | **SECTION: "I"/3** |

## ORDER AND REASONS

Before the Court are a motion for summary judgment and three motions in limine filed by defendants. Plaintiffs in this matter are Clifton Bonvillian, III and Ray Menard. Defendants are Lawler-Wood Housing, LLC, Lawler-Wood, LLC, Tivoli GP, LLC, and Tivoli II, LLC (collectively "Tivoli"). For the following reasons, the motion for summary judgment is **GRANTED IN PART and DENIED IN PART**, and the motions in limine are **DISMISSED AS MOOT**.

### *Background*

This case arises out of the allegedly unlawful closure of the Tivoli Place apartments in which plaintiffs resided prior to Hurricane Katrina. On October 27, 2005, plaintiffs filed a lawsuit against Tivoli.[1]  In their first amended complaint, filed May 4, 2006, plaintiffs allege wrongful eviction under Louisiana law and

---

[1] Rec. Doc. No. 1.  Joann Bailey also was a named plaintiff in this action, but her claims were dismissed with prejudice on June 21, 2006.  Rec. Doc. No. 77.

a violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604. Plaintiffs seek injunctive relief in addition to compensatory and punitive damages.[2]

Tivoli filed its motion for summary judgment on November 15, 2006.[3] Tivoli also filed three motions in limine: 1) to exclude witnesses and exhibits of Ray Menard,[4] 2) to exclude unproduced documents,[5] and 3) to exclude expert testimony regarding mold growth.[6]

### *Relevant Facts*

Tivoli Place is a privately owned apartment building located in New Orleans, Louisiana, which had over 150 rented apartments prior to Hurricane Katrina.[7] On August 28, 2005, Mayor Nagin issued a mandatory evacuation order for the City of New Orleans. Hurricane Katrina struck the New Orleans region on August 29, 2005, causing extensive damage in the city.[8] Following the end of the mandatory evacuation order, Tivoli determined that the building was neither safe nor secure and ordered the building closed and secured

---

[2] Rec. Doc. No. 50.

[3] Rec. Doc. No. 98.

[4] Rec. Doc. No. 101.

[5] Rec. Doc. No. 103.

[6] Rec. Doc. No. 99.

[7] Rec. Doc. No. 98-3, pp. 1-2; Rec. Doc. No. 111, pp. 2-3.

[8] Rec. Doc. No. 98-3, p. 2.

to prevent entry and habitation.[9] The parties dispute the specific nature and extent of damage to the building, but the February, 2006 cost estimate for remediation and renovation of the building, prepared by a contractor for Tivoli, is approximately $5.2 million.[10] Tivoli states that it has informed all tenants that they may return to Tivoli Place after repairs to the property are completed.[11]

### *Law and Analysis*

**I. Rule 56 Standard**

Summary judgment is proper when, after reviewing the "pleadings, depositions, answers to interrogatories . . . [and] affidavits," the court determines that there is no issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.; Fontenot v.*

---

[9] Rec. Doc. No. 98-3, p. 4.

[10] Rec. Doc. No. 98-5, p. 4 ¶XXVIII, pp. 6-7.

[11] Rec. Doc. No. 98-3, p. 6.

*Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The showing of a genuine issue is not satisfied by creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The non-moving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731 (1999) (internal quotation and citation omitted) (alternation in original).

**II. Analysis**

While defendants have moved for summary judgment on all of plaintiffs' claims, the Court finds that addressing the federal FHA claim leads to the appropriate disposition of this matter in federal court.

**A. FHA - 42 U.S.C. § 3604**

Plaintiffs' sole federal claim is an alleged violation of 42 U.S.C. § 3604, which prohibits the refusal "to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin" or "to any buyer or renter because of a handicap." 42 U.S.C. § 3604.

A violation of the FHA may be shown either by proof of discriminatory intent or a showing of significant discriminatory effect. *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996)(citing *Hanson v. Veterans Administration*, 800 F.2d 1381, 1386 (5th Cir. 1986)). "The relevant question in a discriminatory effects claim against a private defendant ... is whether a policy, procedure, or practice specifically identified by the plaintiff has a significantly greater discriminatory impact on members of a protected class." *Id.*

Plaintiffs' Section 3604 claim is one of discriminatory effect; plaintiffs have not made any argument or showing of intentional discrimination. Plaintiffs assert that the closure of

Tivoli Place resulted in a disparate impact on the disabled, elderly, and African-Americans, as a majority of the residents of Tivoli Place are within those categories.[12]  Assuming, *arguendo*, that plaintiffs have standing to sue under Section 3604, and that the closure of Tivoli Place constitutes "a policy, procedure, or practice," the uniform closure of Tivoli Place to *all tenants* cannot constitute a "significant discriminatory effect" that would establish a claim under Section 3604.  *Id.*

In judging an allegation of discriminatory effect under Section 3604, the question is "'whether the policy in question had a disproportionate impact on the minorities in the total group to which the policy was applied.'"  *Edwards v. Johnston County Health Dept.*, 885 F.2d 1215, 1223 (4th Cir. 1989) (quoting *Betsey v. Turtle Creek Associates*, 736 F.2d 983, 987 (4th Cir. 1984)).  The fact that more minorities than non-minorities are affected by a given policy shows a statistical imbalance, but that alone does not establish disparate impact necessary for discriminatory effect.  *Id.*  The disparate impact analysis requires "looking beyond the absolute numbers of white and minority victims to analyze 'the disproportionate burden on minorities.'"  *Id.* (quoting *Huntington Branch, N.A.A.C.P. v. Town of Huntington*, 844 F.2d 926, 938 (2d Cir. 1988)).

In *Edwards*, the Court found no disparate impact under Section

---

[12]Rec. Doc. No. 111, p. 19.

3604 where white and non-white workers were equally treated by the housing policy, even though the majority of workers were non-white and, therefore, more non-white workers were affected by the policy. *Id.* at 1223-24. By contrast, in *Betsey v. Turtle Creek Associates*, the Court found a *prima facie* case of discriminatory effect where the challenged policy resulted in eviction notices for over fifty percent of non-white tenants versus fourteen percent of white tenants. 736 F.2d at 988.

It is uncontested in this case that Tivoli Place was closed to one hundred percent of all tenants, regardless of disability, race, color, religion, sex, familial status, or national origin. Therefore, all tenants were equally affected by the practice which plaintiffs contend constitutes a discriminatory effect under Section 3604. Though plaintiffs allege that, in absolute numbers, more disabled and African-Americans were affected because they purportedly constitute the majority of lessees at Tivoli Place,[13] that fact simply does not establish a "significantly greater discriminatory impact on members of a protected class." *Simms*, 83 F.3d 1546 at 1555. As in *Edwards*, this alleged statistical imbalance alone is insufficient.[14] While the Court is certainly not

---

[13]Rec. Doc. No. 111 p. 19.

[14]In *Edwards*, the Fourth Circuit noted that in cases of equal adverse impact, a disparate impact claim may still succeed if the challenged policy contributes "to continued housing segregation or impede[s] integration efforts." *Edwards*, 885 F.2d at 1224 (citing *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1291 (7th Cir. 1977); *Huntington*, 844 F.2d at 937-38). However, as in *Edwards*, in this case there is no allegation

unsympathetic to the difficulties faced by plaintiffs in the wake of Hurricane Katrina, as a matter of law and based on uncontested facts, plaintiffs cannot establish a *prima facie* case under the FHA.

**B. Supplemental Jurisdiction**

As plaintiffs' FHA claim must be dismissed, there is no remaining federal claim in this case and therefore no jurisdiction pursuant to 28 U.S.C. § 1331.[15]  The Court finds that the exercise of supplemental jurisdiction over the remaining state law claims is not appropriate.  28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."  "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed."  *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993).

---

that defendants' "actions effectively perpetuated segregation or impeded integration efforts ... Nor is there any basis for an allegation."  *Id.* Moreover, defendants have stated that all tenants will be permitted to return to Tivoli Place after repairs are completed.  Rec. Doc. No. 98-3.

[15]The plaintiffs' amended complaint also asserted jurisdiction under 28 U.S.C. § 1332.  However, the plaintiffs acknowledged and stipulated during a telephone conference that the amount in controversy requirement has not been satisfied and, therefore, this Court lacks diversity jurisdiction.  Plaintiffs agree that they will not attempt to enforce any state court judgment in excess of $75,000, exclusive of interest and costs, as to any individual plaintiff. Considering this stipulation, the law, and the facts, the Court finds that plaintiffs have failed to establish diversity jurisdiction.  *See St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it.").

Before the enactment of Section 1367, the United States Supreme Court noted "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966), quoted in *Noble*, 996 F.2d at 799. The Court has not yet had to devote significant time to the issues posed by plaintiffs' state law claims. Were this Court to retain jurisdiction over the state law claims, it would have to delve into disputes under Louisiana state law and resolve extensive factual disagreements among the parties.

Where, as here, "all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988); *see also Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 590 (5th Cir. 1992) (citing *Gibbs* and vacating judgment where "district court ... abused its discretion in retaining jurisdiction over the state law claims after it had dismissed the federal ... claim"); *Lupo v. Marrero Estelle Volunteer Fire Co. No. 1*, No. 05-2196, 2006 U.S. Dist. LEXIS 6503, at *19-20 (E.D. La. Feb. 22, 2006). Considering the

above, the Court declines to continue exercising supplemental jurisdiction over plaintiffs' state law claims now that plaintiffs' federal claims have been dismissed.  Because this case was not originally removed from state court, plaintiffs' state law claims must be dismissed.[16]

For the above and foregoing reasons,

**IT IS ORDERED** that defendants' motion for summary judgment[17] is **GRANTED IN PART,** as to plaintiffs' federal claim under the Fair Housing Act and **DENIED IN PART,** as to plaintiffs' remaining claims.

**IT IS FURTHER ORDERED** that plaintiffs' claim under the Fair Housing Act is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that plaintiffs' remaining claims are **DISMISSED WITHOUT PREJUDICE**, reserving plaintiffs' right to refile those claims in the appropriate state court.

**IT IS FURTHER ORDERED** that all other pending motions are **DISMISSED AS MOOT.**

New Orleans, Louisiana, January   9th   , 2007.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[16] In view of plaintiffs' acknowledgment relative to the jurisdictional amount, defendants do not contest resolution of the state claims in state court. The Court need not consider the defendants' motions in limine which may be addressed by the state court.

[17] Rec. Doc. No. 98.